UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
STEPHEN FLANAGAN, as a Trustee of the GENERAL   Case No. 18-CV-01303-JW
BUILDING LABORERS' LOCAL 66 VACATION FUND;
STEPHEN FLANAGAN, as a Trustee of the GENERAL
BUILDING LABORERS' LOCAL 66 WELFARE FUND;
STEPHEN FLANAGAN, as a Trustee of the GENERAL
BUILDING LABORERS' LOCAL 66 PENSION FUND;
STEPHEN FLANAGAN, as Trustee of the GENERAL
BUILDING LABORERS' LOCAL 66 ANNUITY FUND;
STEPHEN FLANAGAN, as a Trustee of the GENERAL
BUILDING LABORERS' LOCAL 66 LABORERS'
EMPLOYER COOPERATIVE AND EDUCATIONAL
TRUST FUND; STEPHEN FLANAGAN, as a Trustee
of the GENERAL BUILDING LABORERS' LOCAL
66 GREATER NY LABORERS' EMPLOYER
COOPERATIVE AND EDUCATIONAL TRUST FUND;
STEPHEN FLANAGAN, as a Trustee of the GENERAL
BUILDING LABORERS' LOCAL 66 TRAINING PROGRAM;
STEPHEN FLANAGAN, as a Trustee of the GENERAL
BUILDING LABORERS' LOCAL 66 NEW YORK STATE
HEALTH AND SAFETY FUND; STEPHEN FLANAGAN,
as Business Manager of GENERAL BUILDING
LABORERS' LOCAL UNION NO. 66 of the LABORERS'
INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO,

    Plaintiffs,

    -- against --

WILLIAM G. PROPHY LLC d/b/a WGP CONTRACTING
INC. and WILLIAM G. PROEFRIEDT,

    Defendants.
-----------------------------------------------------------------------------X

## **DEFENDANTS' PRE-TRIAL MEMORANDUM OF LAW**

HOGAN & CASSELL, LLP
Attorneys for Defendants
500 North Broadway, Suite 153
Jericho, New York 11753
(516) 942-4700
skhogan@hogancassell.com

This memorandum of law is submitted on behalf of the defendants, William G. Prophy LLC d/b/a WGP Contracting Inc. ("WGP") and William G. Proefriedt ("Proefriedt") (collectively "Defendants"), as their pre-trial memorandum of law. The bench trial in this action is scheduled to commence on October 12, 2021.

By way of background, in this action, Plaintiffs[1] claim that they are entitled to $94,878.61 in damages (plus interest, costs and attorneys' fees) due to Defendants' failure to contribute fringe benefits on behalf of WGP's employees to certain benefit funds affiliated with Local Union 66 ("Union 66"). Union 66 represents laborers.

Significantly, it is undisputed that WGP's employees were not members of Union 66 and that WGP never employed a single individual who was in Union 66. In fact, Plaintiffs' claims are predicated upon the theory that just because the work that WGP's employees were performing was labor-type work covered under the terms of a Trade Agreement that WGP entered into with Union 66 in May 2015 (the "Agreement"), that Defendants were required to pay fringe benefits on behalf of these non-union employees to Plaintiffs.

For multiple reasons, the evidence at trial will demonstrate that Plaintiffs' claims are without merit.

First, and most importantly, the evidence at trial will demonstrate that the work performed by WGP's employees was heavy highway construction, which is work that falls within the ambit of Local Union 1298 ("Union 1298"), not Union 66. Thus, Plaintiffs will not be able to demonstrate at trial that the work performed by WGP's employees fell within the scope of the Agreement. Absent a showing that the work at issue was covered by the Agreement, WGP has no obligation to contribute fringe benefits on behalf of its employees to Plaintiffs. See, e.g., R.I. Carpenters Annuity Fund v. Trevi Icos Corp., 507 F. Supp. 2d 155, 164 (D.R.I. Sept. 5,

---

[1] The terms "Plaintiffs" or the "Funds" will be used to refer to all of the plaintiffs in this action.

2007) ("Because the at-issue work does not fall within the jurisdiction of the Carpenters' CBAs, it is not covered work under the agreements. The Carpenters, therefore, are unable to maintain their secondary claim (premised as it is on the assumption that the work is covered) that the CBAs require contributions to be made to their funds for the actual person (a Laborer) employed on the front-end position, and the Court does not reach this second-level question. Consequently, and based upon the foregoing, the Court finds in favor of Defendant and against Plaintiff on all claims.").

Second, consistent with the reality that the work performed by WGP was not general labor work, the testimony and evidence at trial will show that the State of New York, Department of Labor (the "Labor Department") has determined that the work performed by WGP was heavy highway construction. Thus, the work falls within the ambit of Union 1298.

Third, Plaintiffs' position should be rejected because the monies that they seek from Defendants are, in effect, duplicate payments. More specifically, the evidence at trial will show that in December 2020, Defendants entered into a Stipulation and Order and Determination with the Labor Department where Defendants agreed to pay monies based upon a claim by the Labor Department that Defendants failed to pay proper wages and supplements to WGP's employees. Inasmuch as the evidence at trial will show that the same employees for whom Defendants agreed to pay monies to the Labor Department are the same employees for whom Plaintiffs are seeking benefits paid to their funds, Plaintiffs' claims should be denied as duplicative.

Fourth, the evidence at trial will demonstrate that Proefriedt was misled into signing the Agreement, including but not limited to, being misled into exactly what Union 66 would provide to WGP pursuant to the Agreement. In addition, the evidence at trial will demonstrate that after WGP entered into the Agreement, the Union misled WGP about providing apprentices.

Fifth, even assuming *arguendo* that the evidence at trial shows that WGP should have contributed monies on behalf of its workers to the Funds, Plaintiffs are clearly not entitled to the amount that they seek, which is $94,878.61, because it is evident that the methodology that their auditors used to calculate this amount is highly flawed. In fact, the auditors tacitly admitted at their depositions that this calculation is highly speculative and based upon numerous assumptions. Thus, the testimony at trial will demonstrate that Plaintiffs cannot support the damages that they seek.

Sixth, even assuming *arguendo* that the evidence at trial shows that WGP should have contributed monies on behalf of its workers to the Funds, there is no basis to hold Proefriedt liable and the claims against him should be dismissed. Notably, in a relatively recent case brought by Plaintiffs on claims virtually identical to the claims herein, where the defendant defaulted, the court still held that the principal of a defaulting company was not liable. As the court explained, in order to hold the principal of the company liable, the plaintiff was required to demonstrate that it was appropriate to pierce the corporate veil. See Flanagan v. T.R. Whitney Inc., CV 19-0415 (JS) (AKT), 2020 U.S. Dist. LEXIS 158461, at *13-*20 (E.D.N.Y. Aug. 26, 2020) (after analyzing the issue in detail, the court concluded that "Plaintiff has failed to sufficiently set forth a valid claim for personal liability against the individual defendant Richard Whitney."). Thus, the claims against Proefriedt should be dismissed.

With regard to Defendants' affirmative defenses, Defendants' Answer to the Amended Complaint (docket number 38), sets forth sixteen affirmative defenses. Defendants anticipate that the evidence at trial will support the following affirmative defenses for the following reasons:

- first affirmative defense, not an employer, solely as to Proefriedt for the reasons set forth

above;

- second affirmative defense, failure to state a cause of action, for the reasons set forth above;

- ninth affirmative defense, breach of the Agreement, for the reasons set forth above;

- tenth and eleventh affirmative defenses; Agreement is void or should not be enforced, for the reasons set forth above;

- fourteenth and fifteenth affirmative defenses; fraud pertaining to the Agreement, for the reasons set forth above.

Finally, the statute at issue, 29 U.S.C. § 1132(g)(1)[2], provides that the Court may award attorneys' fees to the prevailing party. While courts are more restrictive in awarding attorneys' fees to a prevailing defendant in a matter such as this lawsuit, this does not preclude the Court from awarding Defendants reimbursement of their attorneys' fees should they prevail at trial. The evidence at trial will demonstrate that Defendants are entitled to reimbursement of their attorneys' fees and costs. See, e.g., Mandell v. The Maxon Co., 2008 U.S. Dist. LEXIS 138371, at *10-*11 (S.D.N.Y. Oct. 6, 2008) (explaining that a five-factor test is used to determine whether attorneys' fees should be awarded to the prevailing party and stating that "Fee awards in E.R.I.S.A. cases, although assessed more often against losing defendants, are nonetheless available to successful defendants against plaintiffs."); Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund, 902 F.2d 185, 188-91 (2d Cir. 1990) (explaining the five-factor test in affirming an award of attorneys' fees issued against the fund in favor of the employers).

---

[2] Defendants recognize that should Plaintiffs succeed on their claims that they would be entitled to reimbursement of their attorneys' fees pursuant to 29 U.S.C. § 1132(g)(2).

Dated: October 6, 2021

Respectfully submitted,

HOGAN & CASSELL, LLP
Attorneys for Defendants

By: _____
Shaun Hogan
500 North Broadway, Suite 153
Jericho, New York 11753
(516) 942-4700
skhogan@hogancassell.com